J-S02019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS T. BROOKS III | : | No. 459 EDA 2025 |

Appeal from the PCRA Order Entered January 9, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005968-2017

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY MURRAY, J.: **FILED MARCH 17, 2026**

The Commonwealth of Pennsylvania appeals from the order granting the Post Conviction Relief Act (PCRA)[1] petition filed by the defendant, Curtis T. Brooks, III (Brooks), vacating Brooks's judgment of sentence, and resentencing Brooks. After careful review, we vacate the PCRA court's order and reinstate Brooks's judgment of sentence entered as part of his May 6, 2019, plea agreement.

The PCRA court described the relevant history underlying this appeal as follows:

On August 5, 2017, [Brooks] went to the apartment of his former girlfriend, Erica Bailey [(Ms. Bailey)], who lived in Darby Borough, Delaware County, Pennsylvania. A fight broke out between [Brooks] and Ms. Bailey's new boyfriend, Mario Garrett [(Mr.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

Garrett)].  As a result of the fight, [Brooks] stabbed and ultimately killed Mr. Garrett….

Relevant to these proceedings, on August 7, 2018, a status hearing was scheduled by the trial court.  At this hearing, stand-in counsel appeared on behalf of [Brooks's] counsel of record[, Tracie Burns, Esquire (Attorney Burns or plea counsel)].  **Also on August 7, 2018, the guilty plea offer from the Commonwealth to murder of the third degree, in exchange for a sentence of 9-18 years**[' imprisonment,] **expired**, **and** [**Brooks**] **rejected the offer**.  Subsequently on May 6, 2019, [Brooks], under a new negotiated offer, pleaded guilty to murder of the third degree and was sentenced … to confinement for a minimum term of 20 years to a maximum term of 40 years to be served in a State Correctional Institution.  [*See*] May 6, 2019, Notes of Testimony [].  On July 7, 2019, [Brooks] filed a *pro se* Notice of Appeal; on November [15], 2019, the Superior Court quashed as untimely [Brooks's] appeal.[2]  [***Commonwealth v. Brooks***, 2151 EDA 2019 (Pa. Super. filed Nov. 15, 2019) (order).]

On May 6, 2020, [Brooks timely] filed a Petition for [PCRA] relief.[3]  On June 3, 2020, [Brooks] filed an amended petition.  …  On September 29, 2023, November 2, 2023, and November 3, 2023, a PCRA hearing was held.  ….  On December 16, 2024, [the PCRA] court entered an order [granting Brooks's petition,] and on January 9, 2025, having discovered a clerical error, [the] court entered an order making clear the [PCRA] court's intention was to vacate [the] judgment of sentence for [Brooks's] case involving murder and related charges, and to dismiss [Brooks's] claims concerning the burglary case.

PCRA Court Opinion, 4/22/25, at 1-3 (punctuation modified; emphasis added; footnote in original omitted; two footnotes added).

_____

[2] Brooks's *pro se* notice of appeal, mailed from prison, was hand-dated July 8, 2019, and docketed on July 18, 2019.

[3] Brooks filed his PCRA petition at two docket numbers:  CP-23-CR-5968-2017 (the instant murder case) and CP-23-CR5969-2017 (a burglary case).  This appeal only involves the murder case.

The Commonwealth timely filed a notice of appeal. The Commonwealth and the PCRA court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following issues:

1. Did the [PCRA] court err in concluding that plea counsel was ineffective for failing to adequately prepare stand-in counsel to represent [Brooks] at a status hearing, where counsel knew the Commonwealth's plea offer would expire, and are the court's factual findings [not] supported by the record?

2. Did the [PCRA] court err in concluding—for the first time in its memorandum opinion—that [Brooks] proved, by a preponderance of the evidence, that his guilty plea was not knowing, voluntary, or intelligent, and that relief for an involuntary plea could be granted through the PCRA without a finding of ineffective assistance?

3. Where the [PCRA] court found that plea counsel was ineffective during plea negotiations, did the [PCRA] court err by vacating [Brooks's] sentence, but not his conviction, without first ordering the Commonwealth to reoffer the plea that was rejected on August 7, 2018, as required under *Lafler v. Cooper*, 566 U.S. 156 (2012)?

Commonwealth's Brief at 4 (issues reordered).

Our standard of review of an order granting "relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa. Super. 2021) (citation omitted). "[W]e defer to the factual findings of the post-conviction court, which is tasked with hearing the evidence and assessing credibility." *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023).

Our standard of review of a PCRA court's legal conclusions, however, is *de novo*. *Id.*

Instantly, the PCRA court granted relief on Brooks's claim of ineffective assistance of Attorney Burns. When reviewing a claim of ineffective counsel, "[c]ounsel is presumed effective, and [the PCRA petitioner] bears the burden of proving otherwise." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014). To prevail on an ineffectiveness claim, a PCRA petitioner must establish that

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Id.* (citations omitted). Failure to prove any prong of the test will defeat an ineffectiveness claim, and counsel cannot be deemed ineffective for failing to raise a meritless claim. *Id.*

"[C]laims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea." *Commonwealth v. Yager*, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*). The "voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Lynch*, 820 A.2d 728, 733 (Pa. Super. 2003) (citation omitted). "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of

guilty[.]" *Commonwealth v. Diaz*, 913 A.2d 871, 873 (Pa. Super. 2006) (citation omitted). "All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made." *Yager*, 685 A.2d at 1004 (citation omitted) (alteration in *Yager*).

In the context of a plea offer rejected by a defendant, to show the requisite prejudice, the defendant "must show the outcome of the plea process would have been different with competent advice." *Commonwealth v. Rizor*, 304 A.3d 1034, 1054 (Pa. 2023) (citing *Lafler*, 566 U.S. at 1054). Where ineffective advice led to the rejection of a plea offer,

> **a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court** (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), **that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.**

*Id.* (quoting *Lafler*, 566 U.S. at 163-64 (emphasis added)). With this in mind, we consider the Commonwealth's issues.

The Commonwealth first argues that the PCRA court's determination that Attorney Burns rendered ineffective assistance at the August 7, 2018, status hearing, by relying on stand-in counsel, is unsupported by the record and legally erroneous. Commonwealth's Brief at 19. The Commonwealth asserts that

> (1) [Brooks] consistently communicated to plea counsel[, Attorney Burns,] his desire to proceed to trial prior to August 7,

- 5 -

2018; (2) [Attorney Burns] took reasonable steps to ensure that [Brooks] made a fully informed decision regarding whether to accept or reject the Commonwealth's plea offer prior to its expiration; (3) [Attorney Burns] met with [Brooks] the weekend prior to August 7, 2018, to confirm his rejection of the offer[,] because [Attorney Burns] was unable to personally appear in court on that date; and (4) [Attorney Burns] communicated [Brooks's] rejection of the offer to the prosecutor in advance of the court appearance….

*Id.*

The Commonwealth disputes the PCRA court's "very specific finding of [plea] counsel's ineffectiveness for not appearing in court" on August 7, 2018. *Id.* at 22 (quoting PCRA Court Opinion, 3/22/25, at 8). The Commonwealth further disputes the PCRA court's finding that Brooks would have accepted the initial plea absent the alleged ineffectiveness; the Commonwealth would not have withdrawn the plea due to intervening circumstances; the trial court would have accepted its terms; and Brooks's sentence would have been less severe. *Id.*

In support, the Commonwealth points to record evidence that Attorney Burns communicated the offer to Brooks; Brooks rejected the offer; and Attorney Burns communicated Brooks's rejection of the offer to the Commonwealth prior to the August 7, 2018, status hearing. *Id.* The Commonwealth directs our attention to Attorney Burns's testimony, at the PCRA hearing, that Brooks consistently stated, both before and after the plea offer, that he wanted to go to trial. *Id.* at 23 (citing N.T., 11/2/23, at 52). Further, when Attorney Burns visited Brooks in jail the weekend prior to the

- 6 -

August 7, 2018, status hearing, Brooks confirmed he wanted to reject the plea

offer. *Id.* The Commonwealth argues,

> [b]ecause [Brooks's] decision regarding the offer had already been conveyed to the prosecutor prior to stand-in counsel's appearance, there was nothing for [stand-in counsel] to negotiate or advise [Brooks] on regarding the offer. Stand-in counsel appeared for the sole purpose of obtaining a trial date, not to revisit or influence a plea decision that had already been made. *See* Pa.R.A.P. 1925(a) Opinion, 4/22/25, at 9. Thus, the underlying premise of the [PCRA] court's finding of ineffectiveness—that [Attorney Burns's] failure resulted in a lost plea opportunity—is unsupported by the record….

*Id.* at 24-25. The Commonwealth emphasizes the lack of any evidence

showing that Attorney Burns failed to communicate the plea offer to Brooks.

*Id.* at 25. The Commonwealth further asserts that stand-in counsel likewise

"took reasonable, prudent steps to ensure that [Brooks] understood the

situation." *Id.*

The Commonwealth further argues that Brooks established no prejudice

resulting from the alleged ineffectiveness. *Id.* at 26. According to the

Commonwealth,

> [t]he [PCRA] court's opinion assumes, without any citation to the record, that had [Attorney Burns] appeared with [Brooks] instead of stand-in counsel on the day the offer was set to expire, [Brooks] would have changed his mind and accepted [the offer]. *See* Pa.R.A.P. 1925(a) Opinion, 4/22/25, at 10. However, there is no evidence in the record that [Brooks] wanted to accept the offer on that day, and [Attorney Burns] was not constitutionally required to appear in court and pressure [Brooks] to accept an offer he clearly did not want at the time. The record refutes any claim of prejudice ….

*Id.* at 27. The Commonwealth directs our attention to Brooks's testimony, at the PCRA hearing, that when the offer of 9 to 20 years was tendered, he did not want to accept the offer. *Id.* (citing N.T., 9/29/23, at 95). The Commonwealth acknowledges that, after rejecting the August 7, 2018, plea offer, Brooks informed Attorney Burns that he was willing to accept a plea, but did not indicate what plea he would accept. *Id.* at 28. The Commonwealth contends this testimony falls short of establishing the prejudice required to sustain Brooks's ineffectiveness claim. *Id.*

In its opinion, the PCRA court opined that

[Brooks] proved by a preponderance of the evidence … [that Attorney Burns] was ineffective for inadequately preparing stand-in counsel for the August 7, 2018, status hearing knowing a crucial event for the case — expiration of a guilty plea offer — would take place, and established by a preponderance of the evidence the error so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place….

….

Based on the record, [the PCRA] court determined on August 7, 2018, a perfect storm was created resulting in the very specific finding of [Attorney Burns's] ineffectiveness for not appearing in court when she was fully aware the offer was set to expire, and for sending stand-in counsel, who was ultimately ill-equipped and without adequate information concerning the offer and its looming expiration. The record shows: on August 7, 2018, [Attorney Burns] did not appear in court, but "stand-in" counsel appeared on behalf of [Attorney Burns] for the sole purpose of obtaining a trial date in the case; and "stand-in" counsel, caught unawares, but upon learning of the information concerning the guilty plea offer and its imminent expiration, stated on the record: "Your Honor, as I'm standing in, and this … was not made obvious to me [prior to] walking in here, if I could have a moment to step back and talk to [Brooks] to make sure [the plea offer has] been conveyed to him so this isn't a blindside" and "I just wanted to

- 8 -

make clear I had not met [] Brooks prior to this morning. **He did indicate to me [that Attorney Burns] and himself had the opportunity to speak this past weekend. He was aware of the offer coming in to today**. So, I just wanted to confirm that with him before we move forward." As a result of the information in the record from August 7, 2018, [the PCRA] court concluded [Attorney Burns] was ineffective for sending stand-in counsel to get a trial date and for not making stand-in counsel aware of the particular posture of the case and its expiring offer. … [**The PCRA] court concluded** under the history of this case, [**Attorney Burns**] **was ineffective when she did not properly advise and prepare stand-in counsel for the status hearing and it is evident from the record there was an imminent deadline concerning the offer**. Additionally, and of importance to note, [**Attorney Burns's**] **ineffectiveness in this case led, not to the offer's acceptance, but to its rejection. Having to endure a sentence more than two times the offer (20-40 years [versus] 9-18 years), absolutely prejudiced [Brooks]**.

PCRA Court Opinion, 4/22/25, at 8-10 (citations omitted; punctuation modified; emphasis added).

Thus, the PCRA court found Attorney Burns rendered ineffective assistance, regarding the Commonwealth's plea offer, by not appearing for the August 7, 2018, status hearing, and by not preparing and advising stand-in counsel regarding the expiring plea offer. ***See generally id.*** Our review of the record, however, discloses no support for the PCRA court's determination.

Our review discloses that on March 8, 2018, the Commonwealth and Brooks, represented by Attorney Burns, appeared before the trial court for a status hearing. N.T., 3/8/18, at 3. At that time, Attorney Burns explained that

- 9 -

this is a status listing. We're going to ask the [c]ourt to give us another status listing …. I think about two weeks, and then we should have an answer [regarding a potential plea deal]. We've got some negotiations that are in place. … [W]e're not at an impasse and … I think that there is going to be a resolution to this matter, non-trial, sir. It's something we'll certainly be able to work out in the next two weeks. Otherwise, then we'll know for certain this is a trial….

*Id.* at 3. For this reason, Attorney Burns requested that on the date scheduled for trial, the matter be listed for a status hearing. *Id.*

At a June 15, 2018, status hearing, the Commonwealth placed the plea offer at issue on the record:

[The Commonwealth:] Your Honor, we're here today for purposes of a status hearing. … It's my understanding that there had been a previously conveyed offer to the defense as it related to the Homicide case and as it related to the Burglary case. I would like to put that information on the record. …

….

… [A]s it relates to [docket number] 5968 of 2017, **the Commonwealth conveyed an offer of murder in the 3rd degree with a sentence of 9 to 18 years being the negotiated plea. Additionally, there was a conversation that, as it related to [docket number] 5969 of [2017], that the Commonwealth would be offering a concurrent sentence in that matter. I just want everyone to be clear that this offer will only be left open until the first week of August, which was the originally scheduled trial date in this matter.** Additionally, I want the defense to be aware of the fact that it is my intention to file essentially a [Pa.R.E.] 404(b) motion and a joinder motion. There [were] allegations and pending cases, Your Honor, that [Brooks] burglarized the same victims and witnesses involved in the homicide in the burglary case in front of Your Honor, and there is a robbery case in Philadelphia involving the same victims and witnesses. And it would be my intention to file [a Pa.R.E. 404(b) motion] on the robbery so that the Commonwealth's permitted to tell the jury about the existence of that case and the facts of that case. And it would be my intention

- 10 -

to file a joinder on the burglary and ask the court to try the burglary and the homicide together in this matter. Obviously, I don't have any more information with me today as those motions will be forthcoming. But, I want the defense to understand that in thinking about the offer in this case. That those matters will be coming and won't be litigated until after the expiration of the offer, so they should factor that into the decision making.

Additionally, I wanted to put on the record that, looking at the homicide guidelines in this matter, … the offer was for [Brooks to plead guilty to] murder of the third degree, which carries an offense gravity score of 14. … [A]ssuming that [Brooks] even has a zero prior record score, on the deadly weapon enhancement used matrix, because that's what would apply, it would not be the standard sentencing matrix because the allegation here is that the victim was stabbed to death. [Thus, Brooks's] standard range guidelines is 90 months to the statutory maximum in this case, which would be 20 years. So, he would be looking at 90 to 240 months as a minimum sentence if he were to go to trial and be convicted of just third[-]degree murder or if he were to go and plead open, they would be the sentencing guidelines, but … as of now, there's no agreement to just an open plea, but I want him to understand that that's what he's looking at.

N.T., 6/15/18, at 3-6 (emphasis and paragraph break added; punctuation and capitalization modified).

Immediately thereafter, Brooks's counsel, Attorney Burns, indicated that she and Brooks have not "been able to have enough conversations as of yet for [] Brooks to fully understand" the plea offer, and what would be admitted at trial if the court granted the Commonwealth's suggested Pa.R.E. 404(b) motion. *Id.* at 6. The parties requested, and the trial court granted, a continuance. *Id.* at 6-7. The trial court, however, designated the August 6, 2018, trial date as a status hearing, and not a jury trial. *Id.* at 7. The trial court stated, "That's when the [plea] offer expires." *Id.*

On August 7, 2018,[4] Kevin O'Neill, Esquire (Attorney O'Neill), standing in for Attorney Burns, appeared as counsel for Brooks at a scheduled status hearing. N.T., 8/7/18, at 3. At that time, the prosecutor stated the following:

> Your Honor, we're here today essentially on what was to be a trial date; however, after the last listing in discussing it with Your Honor, we changed it to a status date. [The status hearing was] supposed to be [on August] 6th, but when [Brooks] wasn't transported yesterday, we passed it until today. The significance of that date was that the Commonwealth had conveyed [a plea deal] offer to [] Brooks that he had until this listing to accept. **It is my understanding in speaking to [Attorney] Burns[,] that [Brooks] is, in fact, rejecting that offer and requesting a trial date in this matter**….

*Id.* (emphasis added). At that time, the prosecutor asked the trial court's permission to

> put the offer on the record, with the understanding that it is being taken off the table today, as per the last listing, and I don't want to have any time in the future that [Brooks] come[s] back and say[s] he did not know what the offer was, and if he had known, he would have taken it.

*Id.* at 3-4.

Attorney O'Neill responded as follows:

> [A]s I'm standing in [for Attorney Burns], and this … was not made obvious to me [prior to] walking in here, **if I could have a moment to step back and talk to [Brooks] to make sure [the offer has] been conveyed to him**[?]

_____

[4] The record reflects that the August 6, 2018, status hearing was rescheduled to the following day, because of the inability to transport Brooks to the courtroom.

*Id.* at 4 (emphasis added).  Following a private discussion with Brooks,

Attorney O'Neill informed the trial court of the following:

> I just wanted to make clear that I had not met [] Brooks prior to this morning.  [**Brooks**] **did indicate to me that** [**Attorney**] **Burns and himself had the opportunity to speak this past weekend.  He was aware of the offer coming in to today.** So, I just wanted to confirm that with him before we move forward.

*Id.* at 4-5 (emphasis added).

The trial court then informed Brooks that "the Commonwealth is going

to put on the record the offer to you so that … if it's reviewed by the Superior

Court, they'll know what the offer was." *Id.* at 5-6.  The following discussion

then transpired, on-the-record:

> THE COURT:  … [T]he reason, … Mr. Brooks, that we put this on the record, … the most important one is that there are certain guidelines that we live by in this court.  Generally speaking, if a person … is tried and convicted by a jury, the court sentences them in accordance with the guidelines.  I generally sentence within the standard range.  … [T]here are times when I not only sentence in the standard range, but run additional charges consecutively.  That being said, the reason we put the offer on the record, and my position with regards to sentencing on the record, is so that if, in fact, you go to trial and are convicted, and sentenced to something that you're not satisfied with, you can't come back to the [c]ourt and say you didn't know about the offer that was made by the Commonwealth.  So, right now, the Commonwealth is going to put on the record the offer to you so that the whole world knows it, and if it's reviewed by the Superior Court, they'll know what the offer was.  And the record will be clear for future reference, all right? ….
>
> [The Commonwealth:] … **As conveyed last time, the offer** [for docket number] 5968 of 2017 **was for murder in the third degree.  That sentence would have been 9 to 18 years on that charge.**  [Brooks] has a second case, [No.] 5969 of [2017], where he's facing related offenses, and he was offered the charge

- 13 -

of burglary with a concurrent three-to-six-year sentence. Obviously, … there were other conditions, being a DNA sample, restitution to the family of the victim …. But that is the general gist of the sentence.

THE COURT: [(To Brooks)] **You're aware of that**?

[Brooks]: **Yes, sir**.

*Id.* at 5-6 (emphasis added; capitalization and punctuation modified). Brooks indicated he had no questions regarding the plea offer. *Id.* at 7. Interestingly, the trial court did not expressly inquire as to whether Brooks accepted or rejected the plea offer. *See id.* Rather, the Commonwealth immediately made clear that the offer was being taken "off the table" as of that date. *Id.* at 8. Thus, the notes of testimony make clear that a plea offer was conveyed to Brooks, and he understood the offer.

At the PCRA hearing, Brooks testified that he "wanted to go to trial with a self-defense theory." N.T. (PCRA Hearing), 9/29/23, at 32. Brooks testified that after the June 15, 2018, status hearing, when the Commonwealth offered a plea deal of 9-20 years in prison, he discussed the offer with Attorney Burns. *Id.* at 30. According to Brooks, Attorney Burns advised that "she felt like … we could proceed to trial and still get a better outcome." *Id.* Brooks confirmed his understanding that the plea offer was for 9-20 years. *Id.* at 31. Following his rejection of the plea offer, Brooks testified that he and Attorney Burns prepared for trial. *Id.* at 33.

Brooks expressly testified that he discussed the Commonwealth's 9-20-year plea offer with Attorney Burns. *Id.* at 41; N.T. (PCRA Hearing), 11/2/23,

- 14 -

at 7. Brooks further acknowledged discussing the plea offer with Attorney Burns in jail, immediately prior to the August 7, 2018, status hearing. N.T. (PCRA Hearing), 9/29/23, at 42, 48. Brooks testified to his belief that the offer had been discussed *in court* prior to the August 7, 2018, status hearing. *Id.* at 41.

> In discussing the offer with Attorney Burns, Brooks testified,
>
> [Attorney] Burns said that she could do better. So she thought that it was better for us to proceed to trial[,] because she believed that I could get a lower number at trial. Then the day of [the August 7, 2018, status hearing], with [Attorney] O'Neill, … it really was not a conversation. He just told me to go with whatever [Attorney Burns] said and trust your gut.

N.T. (PCRA Hearing), 11/2/23, at 7. Brooks testified he "rejected [the offer] thinking that we were going to trial[,] based off what [Attorney] Burns told me[.]" *Id.* at 22. **Brooks further acknowledged he rejected the offer of 9-20 years because he did not want the deal**. *Id.* He stated, "I rejected it because I thought [Attorney Burns] – she said she could do better." *Id.* Brooks continued, "At the point in time, I thought we were going to proceed to trial."[5] *Id.* at 23.

Brooks testified that on May 6, 2019, the scheduled trial date, he received the Commonwealth's final plea offer of 20-40 years in prison. *Id.* at 8. According to Brooks, that was the first time he had heard of the offer. *Id.*

_____

[5] Brooks acknowledged that previously, in March 2018, he had rejected a similar plea deal that offered 9-20 years in prison. N.T. (PCRA Hearing), 11/2/23, at 26.

Brooks testified that Attorney Burns advised him it was a "good deal, that 20 to 40 years is not that much of a long time." *Id.* at 11.

Brooks further indicated that character witnesses were present at court on this date. *Id.* at 19. Brooks indicated that Attorney Burns indicated that these witnesses would help establish his character, but he was not advised that they could be helpful in determining his guilt or innocence. *Id.*

Brooks indicated that after entering the plea, he discussed withdrawing the plea with Attorney Burns. *Id.* at 16. However, Attorney Burns told Brooks he "would just be back at square one." *Id.* Although Brooks still wanted to withdraw the plea, Brooks testified that no motion was filed. *Id.* at 17.

Attorney Burns testified that she has practiced law for 29 years, and has been a member of the Pennsylvania Bar since 1994. *Id.* at 43. Regarding Brooks's murder case, Attorney Burns testified as follows:

> I always told [] Brooks that it was up to him. … [W]e had an imperfect self-defense case. … [T]he issue that we had was that there was no other weapons, at least that were, you know, that had been recovered at the scene. That doesn't mean that nobody didn't pick one up, but there was nothing else recovered at the scene. So I had an imperfect self-defense. I've done these in Delaware County for many years. … What I know from my experience, is that jurors have a very hard time letting people walk out of here with nothing when someone is dead. … [And] I remember explaining that to [Brooks]. You know, that's the problem that we have here. And it's an imperfect self-defense case. The offer was nine [years' imprisonment] to something. I don't remember the high number. I know the low was nine. I didn't think nine was a bad offer. **I presented it to [] Brooks. [] Brooks had always represented to me, always very consistent, that he was going to trial in this matter. That was even before the offer was extended. That was after**

- 16 -

**the offer was extended. His position was always that he was going to trial.**

*Id.* at 49-50 (punctuation modified; emphasis added). Attorney Burns testified that she informed Brooks

> that I was very confident that had I gone to trial on the matter, our worst case scenario was that he was going to be convicted of third[-]degree [murder] and that we would then be looking to the court for sentencing. And I honestly believed that, based upon that representation to [] Brooks, he decided well then, it's worth my while to go to trial and see if I can be found not guilty …. And that's … what we talked about. And that was my position. Worst case scenario….

*Id.* at 51. According to Attorney Burns, Brooks "was always confident that he wanted to go to trial. [Brooks] did not … want that nine to 20 [plea offer] until the day … he ultimately pled to the 20 to 40. " *Id.* at 52. Attorney Burns confirmed that she told Brooks they could always try to negotiate a lower sentence than 9 to 20 years. *Id.* at 52-53. Although Attorney Burns tried to negotiate a sentence of 7½ years to 20 years, the Commonwealth would not agree to that sentence. *Id.* at 52-53.

Attorney Burns explained that when Assistant District Attorney Mann (ADA Mann) took over the case for the Commonwealth,

> the offer of nine to 20 was on the table. We had a listing before [the trial court]. … [ADA Mann] indicated that she had done some subpoena work, that she was getting some phone records, Instagram records, and I think text messages. [ADA] Mann indicated that if those records show what [the] victim says they're going to show, then this offer is going to go up.
>
> ….

- 17 -

> And I believe that was actually on the record. That if these records show what … [the] victim says they're going to show, then the offer is going to go up. So yeah, we knew about it.

*Id.* at 53-54. Attorney Burns testified that she conveyed this information to Brooks and discussed the matter with him. *Id.* at 54.

Attorney Burns testified that, after discussing the plea deal offer of 9-20 years in prison,

> Brooks was adamant. [] Brooks always wanted to go to trial in this matter. And I talked about it. Because at that point, I truly have to rely on my client. Because clearly I'd not seen, I had not yet seen what was in Instagram,[6] what was in the text messages. … [A]nd I … said to [] Brooks, that listen, we have to rely on what you know is in these records. But … I know for a fact that I told him that [ADA] Mann was not one that when she said something, that she didn't go back on it. So that if she said that the offer was going to go up, it was most certainly going to go up. And we didn't know exactly what that number was, but she did indicate that it was going to go up. … [W]e talked about it and I asked [] Brooks to recall what he thought we were going to be looking at from [the] Instagram post, on text messages. **And based upon what it is he told me, … he still made a decision that he wanted to go to trial.**

*Id.* at 54-55 (emphasis added; punctuation modified).

Attorney Burns testified that the day before the August 7, 2018, status hearing, she discussed the Commonwealth's plea offer with Brooks. *Id.* at 56. According to Attorney Burns,

> [**Brooks**] **was very adamant. He wanted to go to trial.** And I remember because the offer was to be revoked the following day. It was the day before. … So I knew for sure. So I knew from prior conversations that … happened like a week or so before

---

[6] The Commonwealth purportedly later discovered posts that placed Appellant in a less-than-favorable light.

that, that the last time I spoke to [Brooks], maybe two weeks prior, a week, two weeks prior, that he still wanted to go to trial. **I went out to the prison on that weekend. It was a weekend, just to make sure that his position had not changed, because I needed to get coverage for that Monday.**

*Id.* at 56-57 (emphasis added). Attorney Burns testified that Brooks did not change his mind after the August 7, 2018, status hearing. *Id.* at 57. Following that status hearing, Attorney Burns and Brooks prepared for trial. *Id.* at 58.

Attorney Burns explained that when the Commonwealth increased the plea offer from a minimum of 9 years to a minimum of 20 years in prison, Brooks still "was going to trial." *Id.* Attorney Burns explained that "at that point, … we can get convicted of the third[-degree-murder charge] and take our chances with the [trial court judge] on sentencing versus [ADA] Mann." *Id.* at 58-59. However, upon obtaining the Instagram and text records, Attorney Burns's view altered:

The Instagram records and text messages … were bad. … They were bad. They shed [] Brooks in a different light. … I'd have to going in, I'd have to explain [] Brooks, but [] Brooks presented well. So it was going to make it a little tougher to make the jury … sympathetic to him. It's just a little bit more work, … but [based upon Brooks's] choice, because he was going to trial, I didn't have a choice but to try to do it. But the records, … I didn't like them.

….

They were bad. I mean, the case would have been better. That number would have never gone to 20 [years] without [the additional evidence]. … So they were kind of tough talking. But that still didn't mean that [Brooks] was not defending himself on the day in question. And that's what we always had … going in

- 19 -

our favor. And that's what I had too. That's what I had to work with. [Brooks] had a great background. He was … from a good family, Philadelphia Catholic high school, college, work. He had good parts to present to the jury. I didn't like the records, but there was absolutely nothing in his presentation, when he presented himself to you, you never saw that person who was writing.

*Id.* at 59-60 (punctuation modified).

Attorney Burns testified that on the scheduled trial date, the Commonwealth presented its 20-40-year plea offer. *Id.* at 63. Attorney Burns discussed the offer with Brooks for approximately 45 minutes, but Brooks still wanted to go to trial. *Id.* at 62. Attorney Burns informed the trial court that Brooks wanted to go to trial. *Id.* After going to her car to obtain Brooks's clothing for trial, Attorney Burns again discussed the offer with Brooks for another 15-20 minutes. *Id.* According to Attorney Burns, "after the second time, [Brooks is] still saying he wanted to go to trial." *Id.* Attorney Burns testified that ADA Mann would not decrease the minimum sentencing offer below 20 years. *Id.*

Attorney Burns also explained her concerns regarding the Commonwealth's Pa.R.E. 404(b) evidence. *Id.* at 100. Attorney Burns indicated that the Commonwealth had a recording of the 911 call during the burglary. *Id.* at 101. She testified,

I heard the evidence. I saw the evidence in the burglary case. … I was not confident that after trial, [the trial court] would run the burglary concurrent. I wasn't confident about that. … I thought that the judge might find the evidence in the burglary case to be egregious enough to warrant a consecutive sentence. And that was what our conversation was mainly on that day.

- 20 -

*Id.* Attorney Burns stated, "I knew [ADA] Mann absolutely was going to ask for the burglary to run consecutively." *Id.* at 102. Further, "[b]ased upon my experience with prior sentences with [the trial judge,] after having heard the evidence, specifically with respect to the burglary case, I knew it was a possibility that [the judge] could run the burglary consecutively." *Id.* 102-03.

Attorney Burns indicated that she never expressed a preference to Brooks: "I let him make the decision. [Brooks] was a smart guy. He didn't have any problems understanding, no problems with comprehension, and was a great critical thinker." *Id.* at 63. Attorney Burns informed Brooks that their worst-case scenario was a conviction of third-degree murder. *Id.* at 64.

Attorney Burns testified that upon entering the courtroom, the trial judge conducted a colloquy, then conversed with Brooks. *Id.* A discussion ensued between Brooks and his family, and, according to Attorney Burns, "there was a lot of confusion. It was a lot of yelling." *Id.* at 69. At that time, Brooks's family encouraged him to take the Commonwealth's plea deal. *Id.* Brooks subsequently acquiesced, and accepted the Commonwealth's plea offer. *Id.*

Attorney Burns acknowledged that following sentencing, Brooks asked to withdraw his plea. *Id.* at 73. At that time, Attorney Burns told him "what I told everybody. You're sentenced. It's too late." *Id.* According to Attorney Burns,

> I also tell my clients, and what I know I told [Brooks], is because after 30 years, you kind of say things the same every time. Sometimes you get what you asked for. You withdraw, you know, sometimes if it gets granted the number goes up. There's no guarantee that you get sentenced and your number goes down. Sometimes it goes up. But when [Brooks] called me, I'd never even entertained [*sic*]. … [B]ut I never told him that I didn't know how to file a motion to withdraw a guilty plea, just that I did not find that it was going to be successful.

*Id.* at 75.

Thus, the evidence is uncontradicted that Brooks was informed of the plea offer, in court and on-the-record, on June 15, 2018. N.T., 6/15/18, at 3-6. Brooks confirmed that Attorney Burns discussed the plea offer with him the weekend before the August 7, 2018, status hearing. N.T. (PCRA Hearing), 9/29/23, at 42, 48. At the August 7, 2018, status hearing, the prosecutor stated that he had discussed the plea offer with Attorney Burns, who informed him that Brooks "is, in fact, rejecting that offer and requesting a trial date in this matter[.]" N.T., 8/7/18, at 3. There is no evidence contradicting the fact that Attorney Burns communicated the plea offer to Brooks, and that Brooks rejected the offer prior to the August 7, 2018, status hearing.

The PCRA court did not find ineffectiveness based upon any advice given to Brooks by Attorney Burns. Rather, the PCRA court based its ineffectiveness finding on Attorney Burns's failure to attend the August 7, 2018, status hearing, sending stand-in counsel in her place. There is no evidence that would support a finding that Brooks would have accepted the plea offer, if Attorney Burns had been present. Rather, the uncontradicted evidence shows

- 22 -

that the Commonwealth communicated the offer to Brooks on June 15, 2018. N.T., 6/15/18, at 3-6. The uncontradicted evidence further confirms that Attorney Burns discussed the offer with Brooks the weekend before the August 7, 2018, status hearing, and Brooks rejected the offer.

Finally, there is no evidence that but for Attorney Burns's absence from the August 7, 2018, status hearing, Brooks would have accepted the plea offer. *See Rizor*, 304 A.3d at 1054. Rather, all evidence points otherwise. Under these circumstances, we conclude the PCRA court erred in determining that Attorney Burns rendered ineffective assistance by failing to attend the August 7, 2018, status hearing. *See id.* Our analysis does not conclude at this point.

In its second issue, the Commonwealth challenges the PCRA court's determination that Brooks tendered an unknowing and involuntary guilty plea on May 6, 2019. Commonwealth's Brief at 36. The Commonwealth points out the PCRA court's contradictory statement, in its April 22, 2025, opinion [Attorney Burns's] ineffectiveness raised … in the PCRA petition and amended PCRA petition." *Id.* at 37 (quoting PCRA Court Opinion, 4/22/25, at 7). The Commonwealth further claims that the PCRA court's order, granting relief to Brooks, did not render **any** findings regarding the competency of counsel's assistance during the May 6, 2019, guilty plea hearing. *Id.* According to the Commonwealth,

> [i]f the defendant entered an involuntary plea due to counsel's ineffectiveness, the appropriate remedy is to vacate the plea. The

lower court cannot leave in place a plea it believes to be involuntary.

*Id.* at 37-38.

The Commonwealth argues,

[Brooks] did not argue before the [PCRA] court that the plea he entered on the day of trial was not knowing and voluntary because "there [were] no indications when [Attorney] Burns told him that she could not do better than the nine to 20 years offered[,]" Supplemental Memorandum …, 11/2/23, at 11, and that "[h]er failure to tell [] Brooks that she could not do better than the offer in August prior to the commencement of trial was ineffective assistance of counsel." *Id.* at 12….

*Id.* at 38. The Commonwealth states that "any ineffectiveness related to the earlier plea offer does not render the subsequent plea involuntary." *Id.*

The Commonwealth further challenges the PCRA court's statement that Brooks only learned of the 20-40-year plea offer on the day of trial. *Id.* According to the Commonwealth, Attorney Burns testified that Brooks was informed of the 20-40-year plea offer at the hearing on the Commonwealth's Pa.R.E. 404(b) motion, which took place in late January 2019. *Id.* at 39. The Commonwealth states this offer was again extended during a pretrial conference shortly before jury selection. *Id.* The Commonwealth points out that the PCRA judge also presided over Brooks's guilty plea hearing, and accepted the plea as knowingly and voluntarily tendered. *Id.* Finally, the Commonwealth argues that Brooks failed to establish any deficient performance by Attorney Burns that resulted in manifest injustice. *Id.* at 41.

Our review discloses that at the PCRA status hearing on December 12, 2024, the PCRA court announced its ruling on Brooks's PCRA petition. The PCRA court vacated Brooks's judgment of sentence, but **accepted** Brooks's guilty plea. *See* N.T., 12/12/24, at 6 (the PCRA court stating, "To make it clear, we are accepting the guilty plea. We feel the guilty plea was, in fact, knowing, openly, [and] intelligently made."). The PCRA court's subsequent order, entered on December 16, 2024, did not invalidate Brooks's guilty plea. *See* PCRA Court Order, 12/16/24 (vacating the judgment of sentence only).

On January 8, 2025, the PCRA court filed an amended order clarifying that the PCRA court vacated Brooks's judgment of sentence in the murder case, and dismissed Brooks's PCRA allegations related to his burglary case. PCRA Court Order, 1/8/25, at 1. Again, the PCRA court did not invalidate Brooks's guilty plea as unknowing and involuntary.

However, in its Pa.R.A.P. 1925(a) opinion, the PCRA court opines that upon review of the notes of testimony from May 6, 2019, it

> questioned under the circumstances whether [] Brooks's guilty plea was voluntary. The record reflects [] Brooks was, at a minimum, overwhelmed on the day he entered the guilty plea — the same day jury selection was scheduled to commence. This court, upon recollection of the events and review of this record in this case, recognizes [] Brooks was a youthful defendant, did not have a proper understanding of the jury trial process, appeared to be emotionally distraught, encountered pressure from his attorney and the family members present in court, was given the impression the Commonwealth offer likely would get better (and notwithstanding this, the offer became staggeringly worse), and on the day of trial[,] received an offer equal to the statutory maximum for third degree murder and was told he would be risking a life sentence if he did not plead guilty. This court

acknowledges, under these circumstances, the validity of []
Brooks' guilty plea **could be** disputed.

PCRA Court Opinion, 4/22/25, at 11-12 (emphasis added). The PCRA court thereafter found Attorney Burns ineffective regarding her preparation of stand-in counsel, and that "Brooks proved by a preponderance of the evidence his guilty plea was not knowing, voluntary, or intelligent." *Id.* at 13.

At this point, we are perplexed as to the rationale expressed in the PCRA court's opinion, as it previously had found Brooks to have knowingly, intelligently, and voluntarily tendered his guilty plea. *See* N.T., 12/12/24, at 6 (the PCRA court stating, "To make it clear, we are accepting the guilty plea. We feel the guilty plea was, in fact, knowing, openly, [and] intelligently made."). Further, the PCRA court entered no order invalidating Brooks's guilty plea as unknowing, unintelligent, or involuntary. Thus, the record clearly contradicts the statements in the PCRA court's opinion. Based upon the record before us, Brooks's guilty plea, entered on May 6, 2019, remains valid. Accordingly, we vacate the PCRA court's order granting PCRA relief, and reinstate Brooks's May 6, 2019, judgment of sentence.[7]

PCRA Court Order vacated. Brooks's judgment of sentence is reinstated. Superior Court jurisdiction is relinquished.

_____

[7] Based on our resolution of Brooks's first two issues, we need not address his remaining claim.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/17/2026</u>